1　WILSON TURNER KOSMO LLP
　　VICKIE E. TURNER (106431)
2　FREDERICK W. KOSMO, JR. (138036)
　　MERYL C. MANEKER (188342)
3　ROBERT K. DIXON (262252)
　　550 West C Street, Suite 1050
4　San Diego, California 92101
　　Telephone: (619) 236-9600
5　Facsimile: (619) 236-9669
　　E-mail: vturner@wilsonturnerkosmo.com
6　E-mail: fkosmo@wilsonturnerkosmo.com
　　E-mail: mmaneker@wilsonturnerkosmo.com
7　E-mail: rdixon@wilsonturnerkosmo.com

8　Attorneys for Defendant
　　MONITRONICS INTERNATIONAL, INC.

9

10　　　　　**UNITED STATES DISTRICT COURT,**

11　　　　　**CENTRAL DISTRICT OF CALIFORNIA**

12　　　　　　　　**SOUTHERN DIVISION**

13

| | |
|---|---|
| 14　KERRY O'SHEA, on behalf of himself, and all others similarly situated, | Case No. 8:13-cv-1054-JVS-JPRx |
| 15　　　　　　Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MONITRONICS INTERNATIONAL, INC.'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, STAY** |
| 16　　　　v. | |
| 17　ALLIANCE SECURITY, LLC., a Delaware limited liability company, | Complaint Filed: July 16, 2013 |
| 18 | |
| 19　MONITRONICS INTERNATIONAL, INC., a Texas corporation, | Date: November 4, 2013 |
| 20 | Time: 1:30 p.m. |
| 21　　　　　　Defendants. | Judge: Hon. James V. Selna |
| 22 | Courtroom: 10C |
| 23 | Magistrate Judge: Hon. Jean P. Rosenbluth |

24

25

26

27　　　　　　　　　　　　　　　　Case No. 8:13-cv-1054-JVS-JPRx

28　　MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
　　MONITRONICS INTERNATIONAL, INC.'S MOTION TO DISMISS, OR, IN THE
　　　　　　　　　　　　　ALTERNATIVE, STAY

# **TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................... 1

II.    PROCEDURAL AND FACTUAL BACKGROUND ................................... 2

    A.    Plaintiff's Allegations .......................................................................... 2

    B.    Similar TCPA Actions Are Pending Against Monitronics In
        Other Districts ...................................................................................... 4

        1.    *Diana Mey v. Monitronics International, Inc., et al.,*
             *Case No. 5:11-cv-00090 (N.D. W. Va.)* ...................................... 4

        2.    *Edith Bowler, et al. v. Monitronics International, Inc.,*
             *Case No. 2:13-cv-0321-JLR (W.D. Wash.)* ................................ 5

        3.    *George Cain v. Monitronics International, Inc.,*
             *Case No: 3:13-cv-1549-L-DHB (S.D. Cal.)* .............................. 7

        4.    Monitronics' Request To The JPML For Centralization
             And Subsequent Developments ..................................................... 8

        5.    *Diana Mey, et. al. v. Honeywell International, Inc., et al.,*
             *Case No. 2:12-cv-1721 (S.D. W.Va.)* ......................................... 8

III.   ARGUMENT.................................................................................................. 9

    A.    Plaintiff's Allegations Are Not Supported With Sufficient
        Factual Details...................................................................................... 9

        1.    Implausible Claims Must Be Dismissed....................................... 9

        2.    Plaintiff Fails To Plead Any Facts To Establish Calls
             Were Made By Or On Behalf Of Monitronics ......................... 10

        3.    Plaintiff Fails To Adequately Allege That An ATDS Was
             Used ............................................................................................ 12

    B.    If Not Dismissed, This Case Should Be Stayed Pending The
        JPML's Decision On Monitronics' Request To Centralize ............... 14

        1.    The Court Has Discretion to Stay This Action.......................... 14

        2.    In The Interests of Judicial Economy, The Court Should
             Stay This Action Pending the JPML's Decision ....................... 15

IV.   CONCLUSION ........................................................................................... 16

i                     Case No. 8:13-cv-1054-JVS-JPRx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MONITRONICS INTERNATIONAL, INC.'S MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, STAY

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Alltrade, Inc. v. Uniweld Prods., Inc.*
    946 F.2d 622 (9th Cir. 1991)........................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................1, 9, 10, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................1, 9, 10, 13

*Church of Scientology v. United States Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979) ......................................................16

*Daniels-Hall v. National Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ......................................................10

*Duran v. Wells Fargo Bank*,
    878 F. Supp. 2d 1312 (S.D. Fla. 2012)........................................14

*Friedman, et al. v. Massage Envy Franchising, LLC*,
    2013 U.S. Dist. LEXIS 84250 (S.D.Cal. June 13, 2013)......................12, 13

*Fuller v. AmeriGas Propane, Inc.,*
    2009 U.S. Dist. LEXIS 71413 (N.D. Cal. August 3, 2009) ........................15

*Gold River, LLC v. La Jolla Band of Luiseno Mission Indians*,
    2011 U.S. Dist. LEXIS 142561 (S.D. Cal. Dec. 9, 2011)...........................14

*Ibey v. Taco Bell Corp.*,
    2012 U.S. Dist. LEXIS 91030 (S.D. Cal. June 18, 2012)...........................14

*Johansen v. Vivant, Inc.*,
    2012 U.S. Dist. LEXIS 178558 (N.D. Ill. December 18, 2012) ............13, 14

*Kemp* v. *Tyson Seafood Grp., Inc.,*
    19 F. Supp. 2d 961 (D. Minn. 1998) ............................................15

*Knutson v. Reply!, Inc.*,
    2011 U.S. Dist. LEXIS 7887 (S.D. Cal. January 26, 2011)........................14

*Landis* v. *N. Am. Co.,*
    299 U.S. 248 (1936) ..................................................................14

*Namovicz v. Cooper Tire Rubber & Co.*,
    225 F. Supp. 2d 582 (D. Md. 2001) .............................................15

ii                          Case No. 8:13-cv-1054-JVS-JPRx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MONITRONICS INTERNATIONAL, INC.'S MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, STAY

*Paul v. Aviva Life & Annuity Co.*,
    2009 U.S. Dist. LEXIS 64420 (N.D. Ill. July 27, 2009) ...............................15

*Rivers* v. *Walt Disney Co.,*
    980 F. Supp. 1358 (C.D. Cal. 1997).............................................................15

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003).....................................................................10

**<u>Federal Statutes</u>**
28 U.S.C. section 1404 ...................................................................................16
28 U.S.C. section 1407 ...................................................................................15
47 U.S.C. section 227 ......................................................................................1
47 U.S.C. section 227 (a)(1) ..........................................................................13
47 U.S.C. section 227(b)(1) ...........................................................................13

**<u>Other Authorities</u>**
David F. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial*
    *Panel on Multidistrict Litigation* (2009) ......................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii          Case No. 8:13-cv-1054-JVS-JPRx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MONITRONICS INTERNATIONAL, INC.'S MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, STAY

# I.    <u>INTRODUCTION</u>

Plaintiff Kerry O'Shea ("O'Shea" or "Plaintiff") asserts that Monitronics International, Inc. ("Monitronics") and/or Alliance Security, LLC ("Alliance") "acting under the actual or apparent authority of Monitronics" violated the Telephone Consumer Protection Act ("TCPA" or "the Act") by purportedly calling his cell phone, without his consent and for a commercial purpose, with the use of a pre-recorded message and/or an automatic telephone dialing system ("ATDS").  (Compl. Dkt. No. 1, ¶¶13-22, 24, and 33-44.)  But O'Shea's Complaint is woefully short on specific factual allegations that would raise his right to relief beyond mere speculation.[1]  (*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).)  The Complaint is merely speculative for at least two reasons:

- O'Shea has failed to allege any factual details to support his assertions, especially as to his claim that Monitronics is responsible for the calls he allegedly received and, thus is a proper party to this action.

- O'Shea has failed to adequately allege that Monitronics used an ATDS to make the alleged calls.  Instead, he merely recites the relevant statutory definition of an ATDS.

Accordingly, since O'Shea's Complaint consists solely of unadorned Monitronics-unlawfully-called-me allegations, the Court should dismiss the Complaint.

Should the Court decline to dismiss the Complaint in its entirety, it should stay this action pending the decision of the Judicial Panel on Multidistrict Litigation ("JPML") on Monitronics' motion, filed September 6, 2013, to centralize the TCPA putative class actions pending against it in a single district for all pretrial proceedings.

---

[1] A true and correct copy of O'Shea's Complaint for Damages and Injunctive Relief Pursuant To The Telephone Consumer Protection Act, 47 U.S.C. § 227, ("Complaint") is attached hereto at Exhibit A.

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Plaintiff's Allegations

O'Shea filed this putative class action lawsuit against Monitronics and Alliance on July 16, 2013.  (Dkt. No. 1.)   Monitronics was served on July 29, 2013.  (Dkt. No. 2.)  Pursuant to a stipulation of the parties, Monitronics' date to respond to the Complaint was extended to September 18, 2013.  (Dkt. No. 9.)

O'Shea claims that from "approximately January 2013 through the present," Monitronics and/or Alliance violated the TCPA by calling his cell phone, without his consent and for a commercial purpose, with the use of a pre-recorded message and/or an ATDS.  (Compl. ¶¶13-22; 33-44.)  But these general allegations are supported by few factual details in the Complaint.  O'Shea claims to have "received a number of unsolicited phone calls to his wireless phone" but does not allege who made them.  (*Id.* ¶13)  Indeed, the only entity O'Shea identifies as being mentioned in any call is "GE Home Security."   According to O'Shea, "[t]hese calls would begin with an automated voice asking Plaintiff if he was interested in placing a free **GE Home Security sign** in his yard, and then would proceed by offering Defendants' home security products and services."  (*Id.* ¶14.)  (emphasis added.)  Leaving aside that O'Shea does not specify which defendants or what products or services were offered, this allegation does nothing to establish Monitronics' alleged involvement in the calls O'Shea received, as GE Home Security is not an authorized dealer for Monitronics.

Similarly, O'Shea makes the conclusory allegation that one of the calls he received was from a telephone "number owned by Defendants or one of their associated telemarketing agencies acting under Defendants' actual or apparent authority" but provides no facts to support his assertion.  (*Id.* ¶16.)

The Complaint also sets forth the following so-called facts to support O'Shea's ATDS allegations:

> These unsolicited phone calls placed to Plaintiff's wireless telephone were placed via an … [ATDS] as defined by 47

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice system"…which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place telephone calls to Plaintiff's cellular telephone.

(*Id.* ¶17.)    Later portions of the Complaint simply paraphrase these generic allegations:

Each such telephone class [sic] was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such number … [thus,] Defendants were able to effectively make thousands of phone calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

(*Id.* ¶¶36 and 41.)[2]   In sum, O'Shea alleges no facts in support of his assertions that (1) the alleged calls were made by or for Monitronics or even related to the commercial availability of Monitronics' home security monitoring services and (2) that the alleged calls were made with an ATDS.

Based on these scant allegations, O'Shea asserts claims for "negligent" violations and "knowing and/or willful" violations of the TCPA.  (*Id.* ¶¶35-39, and 40-44.)  O'Shea also seeks statutory damages and injunctive relief.  (*Id.* ¶¶38-39 and 43-44.)  O'Shea further seeks to represent a putative nationwide class that potentially includes "hundreds of thousands, if not more."  (*Id.* ¶¶24-25.)  The purported class would consist of everyone who: (a) received unsolicited calls from Monitronics or its alleged agents on their cellular phones; (b) with the use of an ATDS or artificial or pre-recorded voice; (c) without the recipients' prior express consent; and (d) within a period of four years before the filing of this Complaint.  (*Id.* ¶24.)

---

[2] O'Shea also alleges that "he was registered on the 'do not call list.'"  (Compl. ¶15.)

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

**B.**     <u>**Similar TCPA Actions Are Pending Against Monitronics In Other Districts**</u>

This action is one of five putative nationwide class actions that have been recently filed against or amended to add Monitronics, all of which claim violations of the TCPA from telemarketing calls made by third parties.

      **1.**     *Diana Mey v. Monitronics International, Inc., et al.*,
           **Case No. 5:11-cv-00090 (N.D. W. Va.)**

This is a putative nationwide class action against Monitronics, Versatile Marketing Solutions, Inc., d/b/a VMS Alarms ("VMS Alarms"), and United Technologies Corp., d/b/a GE Security, a division of UTC Fire & Security, which was filed on May 18, 2011.  In the operative complaint, Mey alleges VMS Alarms, "on behalf of" Monitronics, violated the TCPA by calling her residential phone number – a number she says was listed on the national Do Not Call Registry – without her consent. (*Mey* Second Amended Complaint ("SAC"), Dkt. No. 13, ¶¶35-50.) [3]

Mey asserts the following causes of action:  (1) Negligent Violations of the TCPA's Do Not Call Provisions; (2) Knowing Violations of the TCPA's Do Not Call Provisions; and (3) Injunctive Relief to Bar Future TCPA Violations.  (*Id.* ¶¶71-77.) Mey seeks injunctive relief and statutory damages of $500 to $1,500 per call.  (*Id.* ¶¶7-77 and Relief Sought.)  Mey defined the putative class she seeks to represent as:

> [A]ll persons or entities within the United States whose phone numbers were registered on the Do Not Registry [sic], and who, within the four years prior to the filing of the initial Complaint, received more than one telemarketing call within any twelve-month period of time from, or on behalf of, any of the Defendants promoting their goods or services.

(*Id.* ¶61.)  As the question of Monitronics' liability for the actions of its dealer is potentially dispositive, Monitronics promptly filed a Motion for Summary Judgment

---

[3] In her First Amended Complaint, Mey alleged that Monitronics or VMS Alarms called her cell phone, without her consent using an ATDS in violation of the TCPA. (See *Mey*, First Amended Complaint, Dkt. No. 13, ¶¶73-79.)  Mey removed these allegations and the related causes of action from her Second Amended Complaint.

on January 31, 2012 challenging Mey's "on behalf of" theory of liability.  (*Mey*, Dkt. Nos. 93 and 94.)

The Northern District of West Virginia stayed the action on May 4, 2012 because the Federal Communications Commission ("FCC") was considering the issue of "on behalf of" liability under the TCPA and was expected to issue a Declaratory Ruling shortly thereafter.  (*Mey* Dkt. No. 127.)  That stay remained in place for one year.  (Dkt. No. 159.)  Before the stay, the parties engaged in limited merits discovery solely on the relationships between Monitronics and its alleged agents.

The FCC issued its ruling and the *Mey* Court lifted the stay in May of 2013 and, in August of 2013, the Court denied the outstanding dispositive motions.  At the direction of the Court, the parties filed a revised Rule 26(f) report on September 13, 2013.  (*Mey*, Parties' Joint Submission Regarding Remaining Discovery, Dkt. No. 189.)  As discussed further below, Monitronics also filed a Motion For Stay Or For Coordinated Discovery Pending Decision By The JPML.  (*Mey* Dkt. No. 190.)

**2.**    ***Edith Bowler, et al. v. Monitronics International, Inc.,***
**Case No. 2:13-cv-0321-JLR (W.D. Wash.)**

A second putative nationwide class action lawsuit was filed against Monitronics on February 2, 2013 in the Western District of Washington titled *Bowler, et al. v. Monitronics International, Inc*., Case No. 2:13-cv-0321-JLR.  The Bowler Plaintiffs allege Monitronics and/or its alleged agents acting "on behalf of" Monitronics violated the TCPA by calling their residential phones, without their consent and for a commercial purpose, with the use of pre-recorded messages.  (*Bowler* SAC, Dkt. No. 36, ¶¶1.1, 6.5-6.37, and 8.1-9.4.)  They assert claims for (1) Negligent Violations of TCPA, 47 U.S.C. § 227(b)(1)(B) [Residential Telephone Calls with Prerecorded Messages] and (2) Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(b)(1)(B) [Residential Telephone Calls with Prerecorded Messages].  Based on these alleged TCPA violations, the Bowler Plaintiffs seek injunctive relief and

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

statutory damages.  (*Id.* ¶¶7.8, 8.3, 9.3, 10.3, and 11.3.)  They propose the following national putative class:

> All persons in the United States who received a call on their residential telephone line with a prerecorded message, initiated by or on behalf of Defendant, marketing Defendant's products and services, and without the recipient's prior express consent, at any time in the period that begins four years from the date of this complaint to trial.

(*Id.* ¶7.1.) [4]  The Bowler Plaintiffs also assert that Monitronics or its alleged agents violated the TCPA because their numbers were listed on the national Do Not Call Registry, (*Bowler* SAC, Dkt. No. 36, ¶¶ 6.8-6.37 and 10.1-11.4), and propose a national subclass and assert causes of action for these alleged violations.  (*Id.* ¶¶7.1, 10.1-10.4, 11.1 - 11.4.)

     The parties in *Bowler* have submitted their Joint Status Report and Discovery Plan.  (*Bowler*, Dkt. No. 25.)  The court has issued protective orders pertaining to the production of confidential information as well as the production of electronically stored information.   (Dkt. Nos. 27 and 28.)   Monitronics has provided written discovery responses and produced documents.   The parties are in the process of scheduling depositions of company witnesses and the named plaintiffs.  Additionally, the court issued a Scheduling Order pursuant to which the parties are to complete class certification discovery by September 20, 2013, and the Bowler Plaintiffs are to file their motion for class certification by October 21, 2013. (Dkt. No. 31.)  As discussed in further detail below, the Bowler Plaintiffs filed a request for a stay on September 12, 2013 pending a determination by the JPML on the question of centralization. (Dkt. No. 40.)

---

[4]  In addition, the Bowler Plaintiffs allege violations of two Washington consumer protection statutes and identify a subclass to pursue those claims.

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

3.   *George Cain v. Monitronics International, Inc.,*
**Case No: 3:13-cv-1549-L-DHB (S.D. Cal.)**

A fourth putative nationwide TCPA class action was brought against Monitronics in the Southern District of California.  Though filed on July 2, 2013, Monitronics was not served until August 15, 2013.  (*Cain*, Dkt. No. 1.)  The *Cain* action is almost identical to O'Shea's.  Cain claims Monitronics and/or its alleged agents violated the TCPA by using "an artificial or pre-recorded voice" and an ATDS to call his cell phone, without his consent and for a commercial purpose.  (*Cain* Compl., Dkt. No. 1,  ¶¶14-21.)

Cain alleges causes of action for:  (1) Negligent Violations of TCPA, 47 U.S.C. § 227 *et seq.* [Cellular Telephone Calls made with an ATDS and a Prerecorded Voice]; and (2) Willful Violations of TCPA, 47 U.S.C. § 227 *et seq.* [Cellular Telephone Calls made with an ATDS and a Prerecorded Voice].  (*Id.* 34-41, 14-15.) Based on these alleged TCPA violations, Plaintiff seeks injunctive relief and statutory damages of $500 to $1,500 per call.  (*Id.* ¶¶36-37, 40-41, and Prayer for Relief.)  Cain seeks to represent a class defined as follows:

> All persons within the United States who received any telephone call from Defendant or its agent/s [sic] and/or employee/s [sic] to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice within the four years prior to the filing of this Complaint.

(*Id.* ¶23.)

On August 27, 2013, the Court granted the parties' joint motion to extend the deadline for Monitronics to file its first responsive pleading to September 26, 2013. (*Cain* Dkt. No. 12.)

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

**4.    Monitronics' Request To The JPML For Centralization And Subsequent Developments**

Because all of the above cases involve claims that Monitronics, or agents purportedly acting on its behalf, violated the TCPA by calling the various plaintiffs residential and/or cellular telephones, without plaintiffs' consent and for commercial purposes, on September 6, 2013, Monitronics filed a motion for transfer of this case along with the *Mey* and *Cain* cases, to a single district for coordinated or consolidated pretrial proceedings, (MDL No. 2493, *In re Monitronics International, Inc. Telephone Consumer Protection Act Litigation.*)   Monitronics requested that these cases be transferred to the Honorable James L. Robart of the Western District of Washington, the current venue of the *Bowler* action, as that case is the most advanced procedurally and most comprehensive in terms of claims.   Monitronics is hopeful that the JPML will consider Monitronics' motion for transfer of these TCPA class actions at the hearing session scheduled for December 5, 2013.

On September 12, 2013, the Bowler Plaintiffs filed a Motion to Stay Proceedings Pending Resolution of MDL Motion to Transfer in the *Bowler* case. (*Bowler* Dkt No. 40.)  The Bowler Plaintiffs noted that all four cases "are premised on nearly identical factual allegations," and that, in their view, "[g]iven the strong likelihood that these cases will be consolidated by the" JPML, "the need for a stay…to promote the purposes of coordinated MDL treatment is compelling."  (*Bowler* Dkt. No. 40 at 1.)  This motion is noted for consideration on September 20, 2013.  (*Id.*)

On September 13, 2013, Monitronics filed a motion requesting that the *Mey* action be stayed or, in the alternative, discovery between all of the pending actions be coordinated.  (*Mey* Dkt. No. 190.)

**5.    *Diana Mey, et. al. v. Honeywell International, Inc., et al.,* Case No. 2:12-cv-1721 (S.D. W.Va.)**

Also, on September 13, 2013, Monitronics was added as a defendant in a fifth putative nationwide class action alleging violations of the TCPA, *Mey, et. al. v.*

8

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

1   *Honeywell International, Inc.*, *et al.,* Case No. 2:12-cv-1721, Southern District of

2   West Virginia.  The *Honeywell* action was brought by Diana Mey, the plaintiff in the

3   case brought in the Northern District of West Virginia, and a second plaintiff.  It has

4   been pending since April 30, 2012 against Honeywell International, Inc. and others,

5   (*Honeywell* Dkt. No. 1), and discovery had been underway for some time.

6   Monitronics has not yet been served in this action.

7       Plaintiffs' claims against Defendants, which include Monitronics, are that they

8   "violated provisions that prohibit telephone solicitation calls to telephone numbers

9   listed on the National Do Not Call Registry," as well as "provisions that bar

10  prerecorded or autodialer calls placed to residential telephone lines" and "provisions

11  that prohibit telemarketing calls to cell phones that are initiated through an ATDS."

12  (*Honeywell* First Amended Complaint, Dkt. No. 119, ¶3.)

13      Plaintiffs seek to represent a putative class of "all persons within the United

14  States whose phone numbers were registered on the Do Not Call Registry, and who,

15  after April 30, 2008 received more than one telemarketing call within any twelve-

16  month period" or "received one or more prerecorded or autodialed telemarketing calls

17  from or at the direction of ISI promoting the sale of the Honeywell or Monitronics'

18  goods or services."  (*Id*. ¶63.)  Monitronics intends to notify the JPML of the

19  existence of this "Tag-along" action shortly.

20                          **III.   ARGUMENT**

21  **A.   Plaintiff's Allegations Are Not Supported With Sufficient Factual Details**

22              **1.      Implausible Claims Must Be Dismissed**

23      To survive a Rule 12(b)(6) motion, the complaint must not only provide the

24  defendant with fair notice of the claim's basis, but must also establish that the

25  requested relief is plausible on its face.  (*Iqbal*, 556 U.S. at 687; *see also Twombly*,

26  550 U.S. at 555.)  "Determining whether a complaint states a plausible claim of relief"

27  is a "context-specific task that requires the reviewing court to draw on its judicial

28  experience and common sense."  (*Iqbal,* 556 U.S. at 679 (citations omitted).)

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

1    In analyzing a 12(b)(6) motion, the court assumes that the complaint's factual

2  allegations are true, and construes them in favor of the non-moving party.  (*Daniels-*

3  *Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).)  But the court is not

4  "required to accept as true … allegations that are merely conclusory, unwarranted

5  deductions of fact, or unreasonable inferences."  (*Id*.)  Moreover, the court need not

6  "assume the truth of legal conclusions merely because they are cast in the form of

7  factual allegations."  (*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139

8  (9th Cir. 2003).)

9    In addition, for a complaint to survive scrutiny under Rule 12(b)(6), the

10  complaint's "factual allegations must be enough to raise a right to relief above the

11  speculative level…"  (*Twombly*, 550 U.S. at 555) (internal citations omitted).)  A

12  complaint fails to do this if it simply contains "an unadorned, the-defendant-

13  unlawfully-harmed-me accusation."  (*Iqbal,* 556 U.S. at 678).)  A complaint also fails

14  to surmount the speculative threshold if it only includes "conclusions, and a formulaic

15  recitation of the elements of a cause of action" or "naked assertion[s]" devoid of

16  "further factual enhancements."  (*Twombly*, 550 U.S. at 555, 557; *see also Iqbal*, 556

17  U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by

18  mere conclusory statements, do not suffice").)

19    Here, O'Shea's Complaint should be dismissed because it rests not on facts, but

20  on unadorned, Monitronics-unlawfully-called-me allegations.

21    **2.    Plaintiff Fails To Plead Any Facts To Establish Calls Were**

22    **Made By Or On Behalf Of Monitronics**

23    O'Shea's Complaint fails to allege sufficient facts about the alleged calls, but

24  rather only contains legal conclusions that are cast in the form of factual allegations.

25  In particular, the Complaint does not contain:

26    •    Facts supporting O'Shea's unfounded conclusion that the alleged

27        calls related to Monitronics' home security monitoring services

28        and/or were made by or for Monitronics;

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

1      •      The nature of the calls he received;

2      •      Facts that illustrate that neither O'Shea nor anyone else in his

3             household gave Monitronics and/or its alleged agents O'Shea's cell

4             phone number;

5      •      Facts that illustrate that neither O'Shea nor anyone else in his

6             household purchased any goods or services from the individual or

7             company that made the alleged call;

8      •      O'Shea's cell phone number that was allegedly called; and

9      •      Approximately how many calls O'Shea allegedly received;

10     Moreover, O'Shea fails to allege any facts that tie Monitronics to the alleged

11 calls he received.  In fact, his allegations seem to demonstrate the opposite.  One of

12 the few factual details O'Shea provides is that the alleged "calls would begin with an

13 automated voice asking Plaintiff if he was interested in placing a free **GE Home**

14 **Security sign in his yard...**"  (Compl. ¶14 (emphasis added).)  If anything, this

15 factual allegation seems to infer the alleged call was placed by or on behalf of GE

16 Home Security.  O'Shea fails to include any additional facts establishing that the

17 alleged calls were made by or on behalf of Monitronics.  Indeed, nowhere in the

18 Complaint does O'Shea plead any connection between GE Home Security and

19 Monitronics.

20     Even as to the calls he does describe, O'Shea does not identify which

21 Defendant purportedly made them.  Rather, he claims to have "received a number of

22 unsolicited phone calls," but does not identify from whom.  (*Id.* ¶13)  He alleges that

23 "one of the unsolicited phone calls...originated from...a number owned by

24 Defendants or one of their associated telemarketing agencies acting under Defendants'

25 actual or apparent authority," but provides no facts to support this assertion.  (*Id.* ¶16.)

26     O'Shea also fails to describe, with sufficient specificity, the nature of the calls

27 he allegedly received.  This information is crucial because, as explained, the lone

28 detail alleged regarding the products or services offered relates to GE Home Security,

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

not either of the defendants.  Absent allegations describing the nature of these alleged calls – specifically the inclusion of some factual enhancements that would make it plausible that the calls were made by or on behalf of Monitronics – the Complaint fails to raise O'Shea's right to relief against Monitronics above mere speculation.

Moreover, to the extent O'Shea is seeking to impose liability on Monitronics for calls purportedly made by Alliance, his Complaint is devoid of any facts that might show that an agency relationship, or any other basis for vicarious liability, exists. O'Shea baldly asserts, albeit "on information and belief," that "Monitronics actively directed Alliance to conduct a telemarketing campaign for the purpose of selling Monitronics' products and services," but provides no facts to support his assertion. (Compl. ¶8.)  This is the only allegation O'Shea makes regarding the relationship between the two defendants, neither of which is the entity he says was identified in the calls he received.  The remainder of the Complaint is simply laced with references to "Defendants or their agents" having violated the statute.  However, this "rote recitation" of conclusory language of agency is "not enough to show an agency relationship under" California law.  (*Friedman, et al. v. Massage Envy Franchising, LLC*, 2013 U.S. Dist. LEXIS 84250, *8-9 (S.D.Cal. June 13, 2013).)  O'Shea must plead "facts that might demonstrate the three" factors necessary to create an agency relationship under California law exist.  (*Id*.)  This he has failed to do.[5]

### 3.    Plaintiff Fails To Adequately Allege That An ATDS Was Used

O'Shea's Complaint is also deficient because he conclusory alleges that an ATDS was used to make the alleged calls.[6]  Specifically, O'Shea's ATDS allegations are insufficient because they are mere a "formulaic recitation" of the elements of a

---

[5] Indeed, given the total lack of any facts that would show that O'Shea's "injury is fairly traceable" to Monitronics, O'Shea lacks the Article III standing necessary to sue Monitronics at all.  (*Massage Envy*, 2013 U.S. Dist. LEXIS 84250, *11-12.)

[6] Covering his bases, O'Shea alleges the calls he received "were placed via an automatic telephone dialing system" and by using "an artificial or prerecorded voice system."  (Compl. ¶17.)

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

1   violation of the TCPA – which the Supreme Court has said is insufficient.  (*Twombly,*
2   550 U.S. at 555; *see* 47 U.S.C. § 227(b)(1)(A) (making certain calls using an ATDS
3   unlawful).)

4       O'Shea makes two allegations in the Complaint related to the purported use of
5   an ATDS.  (Compl. ¶¶17, 36, and 41.)  But these allegations are essentially mirror
6   images of each other, as the second allegation paraphrases the first.

7       *First*, O'Shea alleges that he received unsolicited calls "placed via an
8   [ATDS]...which had the capacity to produce or store numbers randomly or
9   sequentially, and to dial such numbers, to place telephone calls to Plaintiff's cellular
10  telephone."  (*Id*. ¶17.)   The Act defines an ATDS as "equipment which has the
11  capacity – (A) to store or produce telephone numbers to be called, using a random or
12  sequential number generator; and (B) to dial such numbers."  (47 U.S.C. § 227 (a)(1).)
13  In other words, O'Shea's ATDS allegation merely recites (almost verbatim) the Act's
14  definition of an ATDS.  He provides absolutely no facts to support the conclusion that
15  such a device was used.  A complaint that simply repeats the statutory definition of the
16  prohibited equipment as an allegation "does not state with a level of factual specificity
17  a claim under the TCPA."  (*Massage Envy*, 2013 U.S. Dist. LEXIS 84250 at *6-7; *see*
18  *also Johansen v. Vivant, Inc.*, 2012 U.S. Dist. LEXIS 178558, *8 (N.D. Ill. Dec. 18,
19  2012) (dismissing   complaint as simply "repeating the language of the statute
20  regarding ATDS").)  Such "threadbare recitals of the elements of a cause of action …
21  do not suffice."  (*Iqbal*, 556 U.S. at 678.)

22      *Second,* O'Shea asserts, "on information and belief," that Monitronics used an
23  ATDS to make "thousands of phone calls simultaneously to lists of thousands of
24  wireless phone numbers of consumer without human intervention."  (Compl. ¶¶ 36
25  and 41.)  But allegations made solely on "information and belief," unsupported by
26  "more specific factual allegations . . . are merely legal conclusions couched as factual
27  allegations" and thus are insufficient to state a claim.  (*Gold River, LLC v. La Jolla*
28  *Band of Luiseno Mission Indians*, 2011 U.S. Dist. LEXIS 142561, *5 (S.D. Cal.

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

1    Dec. 9, 2011) (finding that "[c]onclusory allegations, especially those made upon

2    information and belief, 'do not suffice'" to satisfy Rule 8's pleading requirements).

3      Courts around the country have regularly dismissed TCPA claims based upon

4    inadequate allegations, similar to the ones here, that the defendants in those cases

5    made calls using an ATDS.  (*See*, *e.g.*, *Ibey v. Taco Bell Corp.*, 2012 U.S. Dist.

6    LEXIS 91030, *9-10 (S.D. Cal. June 18, 2012) (dismissing TCPA claim because

7    plaintiff failed to adequately allege defendant used an ATDS to send text messages);

8    *Knutson v. Reply!, Inc.*, 2011 U.S. Dist. LEXIS 7887, *6 (S.D. Cal. Jan. 26, 2011)

9    (dismissing TCPA claim where "[t]here [was] nothing ... that allow[ed] the court to

10   infer the calls were randomly generated or impersonal"); *Johansen*, 2012 U.S. Dist.

11   LEXIS 178558 *11 (dismissing TCPA claim because plaintiff failed to "provide the

12   circumstances surrounding [the calls] to establish his belief that the messages were

13   pre-recorded or delivered via the ATDS"); *Duran v. Wells Fargo Bank*, 878 F. Supp.

14   2d 1312, 1316 (S.D. Fla. 2012) (dismissing a TCPA claim as devoid of facts to

15   support allegation that an ATDS or artificial or prerecorded voice was used).)

16   **B.**  **If Not Dismissed, This Case Should Be Stayed Pending The JPML's**

17     **Decision On Monitronics' Request To Centralize**

18      **1.**  **The Court Has Discretion to Stay This Action**

19     Should the Court decline to dismiss O'Shea's Complaint outright, it should

20   exercise its discretion to stay all proceedings in this action pending the JPML's

21   decision whether to transfer this case to another district to be centralized with the three

22   other TCPA class actions pending against Monitronics.  The authority of a federal

23   court to stay proceedings is well established.  (*Landis* v. *N. Am. Co.,* 299 U.S. 248,

24   254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in

25   every court to control the disposition of the causes on its docket with economy of time

26   and effort for itself, for counsel, and for litigants").)  The Court has "the inherent

27   power to stay the proceedings of an action, so as to control [the] docket, to conserve

28

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

judicial resources, and to provide for the just determination of cases." (*Kemp* v. *Tyson Seafood Grp., Inc.,* 19 F. Supp. 2d 961, 964 (D. Minn. 1998).)

Courts routinely exercise this inherent authority to stay proceedings when a motion to transfer under 28 U.S.C. § 1407 is before the JPML. (*See, e.g., Rivers* v. *Walt Disney Co.,* 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (it is "appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL panel"); *Namovicz v. Cooper Tire Rubber & Co.*, 225 F. Supp. 2d 582, 585 (D. Md. 2001) (granting "stay to ensure that, in the event consolidation . . . is ordered, there is consistent treatment of the numerous lawsuits and that judicial resources are not wasted"); *see also* David F. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation*, § 3:15, p. 37 (2009) ("[d]istrict courts ... readily stay[] proceedings pending a Panel decision").)

### 2.    In The Interests of Judicial Economy, The Court Should Stay This Action Pending the JPML's Decision

As noted, Monitronics has filed a motion to transfer this and the other TCPA putative class actions to a single district.  Monitronics is hopeful that its motion will be addressed by the JPML in the hearing session scheduled for December 5, 2013. The issuance of a stay of this action pending a decision by the JPML on that motion will conserve the court's resources, avoid the inefficiencies associated with duplicative litigation, and avoid the wastefulness of potentially redundant discovery and litigation.  (*See, e.g., Fuller v. AmeriGas Propane, Inc.,* 2009 U.S. Dist. LEXIS 71413, *6 (N.D. Cal. August 3, 2009) ("Duplication of case management tasks by multiple courts is not an economical use of judicial resources."); *Paul v. Aviva Life & Annuity Co.*, 2009 U.S. Dist. LEXIS 64420, *3 (N.D. Ill. July, 27, 2009) ("[i]f the JPML transfers this action, we will no longer have jurisdiction over pre-trial matters and this court would have wasted judicial resources by addressing various pre-trial motions that could have been resolved in the transferee court").)  Finally, a brief delay is unlikely to prejudice any party because discovery has not yet commenced in this

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

matter and a scheduling conference is not due to be held until December 9, 2013. (*O'Shea* Dkt. No. 8.)

If the JPML declines to centralize the TCPA class actions against Monitronics, this action may nonetheless be eligible for dismissal, stay or transfer pursuant to the first-to-file rule, (*Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 749-50 (9th Cir. 1979); *Alltrade, Inc. v. Uniweld Prods., Inc.* 946 F.2d 622 623 (9th Cir. 1991)), or transfer pursuant to 28 U.S.C. § 1404.  Monitronics reserves the right to seek such relief should it be warranted.  In any event, at a minimum, Monitronics proposes and will request that the *Cain* action, which is virtually identical to this case, be transferred to this district and consolidated with this action.

## IV.   **CONCLUSION**

As O'Shea's Complaint is devoid of the factual allegations necessary to establish, among other things, that the calls he allegedly received were made by or on behalf of Monitronics or were made using an ATDS, it should be dismissed in its entirety.  Alternatively, should the Court decline to dismiss the Complaint, it should stay this action pending a determination by the JPML on Monitronics' request for centralization of the various TCPA putative class actions currently pending against it.


Dated:     September 18, 2013          **WILSON TURNER KOSMO LLP**


By:   /s/     Meryl C. Maneker
MERYL C. MANEKER
FREDERICK W. KOSMO, JR.
VICKIE E. TURNER
ROBERT K. DIXON
Attorneys for Defendant
MONITRONICS INTERNATIONAL, INC.

MONITRONICS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

# EXHIBIT A

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:(619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY O'SHEA, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANCE SECURITY, LLC., a Delaware limited liability company,<br><br>MONITRONICS INTERNATIONAL, INC., a Texas corporation,<br><br>Defendants. | Case No.:    **5ACV13-1054 JVS(JPRx)**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 et seq.**<br><br>DEMAND FOR JURY TRIAL<br><br>**By Fax** |

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

**INTRODUCTION**

1.  Kerry O'Shea ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Alliance Security, LLC and Monitronics International, Inc. ("Defendants"), in negligently, and/or willfully contacting Plaintiff through telephone calls on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**JURISDICTION AND VENUE**

2.  Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to different states than that of the Defendants, providing jurisdiction under 28 U.S.C. Section 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

3.  This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, a federal statute.

4.  Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) and 1441(a) because (i) a substantial part of the events giving rise to Plaintiff's claim occurred in this judicial district and (ii) Defendants, at all times herein mentioned, were doing business in the County of Orange, State of California.

/ / /

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

**PARTIES**

5.     Plaintiff Kerry O'Shea is, and at all times mentioned herein was, a resident of the State of California.  He is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

6.     Defendant Alliance Security, LLC (hereinafter "Alliance") is a Delaware limited liability company that maintains its principal place of business at 2720 N. Stemmons Freeway, Suite. 300, Dallas, Texas 75207-2237.

7.     Defendant Monitronics International, Inc. (hereinafter "Monitronics") is a Texas corporation whose headquarters are located at 2350 Valley View Lane, Suite 100, Dallas, Texas 75234-5736.  Monitronics is registered to do business in the state of California, entity number 200703000003.

8.     Monitronics offers home security monitoring products and services. Alliance is an authorized dealer of Monitronics and installs home security systems on behalf of Monitronics.  On information and belief, Monitronics actively directed Alliance to conduct a telemarketing campaign for the purpose of selling Monitronics' products and services.  At all times mentioned herein, Alliance was acting under the actual or apparent authority of Monitronics.

9.     Plaintiff alleges that at all times relevant herein Defendants conducted business in the state of California and in the County of Orange, and within this judicial district by offering home security products and services to California residents through a telemarketing campaign.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**
**(TCPA), 47 U.S.C. §§ 227 *et seq.***

10.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

12.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

**FACTUAL ALLEGATIONS**

13.     Commencing approximately January of 2013, through the present, Plaintiff O'Shea received a number of unsolicited phone calls to his wireless phone, for which Plaintiff provided no consent to call. These calls were received

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

---

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

1    approximately three times every week and on some occasions twice in a single
2    day.

3        14.    These calls would begin with an automated voice asking Plaintiff if he
4    was interested in placing a free GE Home Security sign in his yard, and then would
5    proceed by offering Defendants' home security products and services.

6        15.    During the phone calls, Plaintiff would be instructed that he could
7    press a digit to opt out from the call list. He has done so on numerous occasions
8    with no success.    In addition, Plaintiff has followed the automated voice
9    instructions until he reached a live operator. He would then tell the operator that
10   he was registered on the "do not call list" and wished to not be contacted anymore.
11   This was also of no success.

12       16.    More than one of the unsolicited phone calls Plaintiff received
13   originated from the telephone number (214) 452-0007, a number owned by
14   Defendants or one of their associated telemarketing agencies acting under
15   Defendants' actual or apparent authority.

16       17.    These unsolicited phone calls placed to Plaintiff's wireless telephone
17   were placed via an "automatic telephone dialing system," ("ATDS") as defined by
18   47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as
19   prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or
20   store numbers randomly or sequentially, and to dial such numbers, to place
21   telephone calls to Plaintiff's cellular telephone.

22       18.    The telephone number that Defendants, or their agents, called was
23   assigned to a cellular telephone service for which Plaintiff incurred a charge for
24   incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

25       19.    These telephone calls constitute calls that were not for emergency
26   purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

27
28

---

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

20.     Plaintiff did not provide Defendants or their agents prior express consent to receive unsolicited phone calls pursuant to 47 U.S.C. § 227 (b)(1)(A).

21.     These telephone calls by Defendants or their agents therefore violated 47 U.S.C. § 227(b)(1).

22.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiff provided express consent within the meaning of the statute.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on behalf of himself and on behalf of and all others similarly situated ("the Class").

24.     Plaintiff represents, and is a member of the Class, consisting of all persons within the United States who received any unsolicited telephone calls from Defendants or their agents on their paging service, cellular phone service, mobile radio service, radio common carrier service, or other service for which they were charged for the call, through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3) or artificial or prerecorded voice, which telephone calls by Defendants or their agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint.

25.     Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

26.     Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the Class members via their cellular

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

Exh. A - 23

1  telephones by using unsolicited telephone calls, thereby causing Plaintiff and the
2  Class members to incur certain cellular telephone charges or reduce cellular
3  telephone time for which Plaintiff and the Class members previously paid, and
4  invading the privacy of said Plaintiff and the Class members. Plaintiff and the
5  Class members were damaged thereby.

6  27.     This suit seeks only damages and injunctive relief for recovery of
7  economic injury on behalf of the Class and it expressly is not intended to request
8  any recovery for personal injury and claims related thereto. Plaintiff reserves the
9  right to expand the Class definition to seek recovery on behalf of additional
10  persons as warranted as facts are learned in further investigation and discovery.

11  28.     The joinder of the Class members is impractical and the disposition of
12  their claims in the Class action will provide substantial benefits both to the parties
13  and to the Court. The Class can be identified through Defendants' records or
14  Defendants' agents' records.

15  29.     There is a well-defined community of interest in the questions of law
16  and fact involved affecting the parties to be represented. The questions of law and
17  fact to the Class predominate over questions which may affect individual Class
18  members, including the following:

19       a. Whether, within the four years prior to the filing of this Complaint,
20          Defendants or their agents placed telephone calls without the
21          recipients' prior express consent (other than a telephone call made
22          for emergency purposes or made with the prior express consent of
23          the called party) to a Class member using any automatic telephone
24          dialing system or an artificial or pre-recorded voice system, to any
25          telephone number assigned to a cellular telephone service;

26       b. Whether Plaintiff and the Class members were damaged thereby,
27          and the extent of damages for such violation; and

28

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

Exh. A - 24

1          c. Whether Defendants and their agents should be enjoined from
2               engaging in such conduct in the future.

3     30.     As a person that received at least one unsolicited telephone call to his

4 cell phone without Plaintiff's prior express contest, Plaintiff is asserting claims that

5 are typical of the Class. Plaintiff will fairly and adequately represent and protect

6 the interests of the Class in that Plaintiff has no interest antagonistic to any

7 member of the Class.

8     31.     Plaintiff and the members of the Class have all suffered irreparable

9 harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class

10 action, the Class will continue to face the potential for irreparable harm. In

11 addition, these violations of law will be allowed to proceed without remedy and

12 Defendants will likely continue such illegal conduct. Because of the size of the

13 individual Class member's claims, few, if any, Class members could afford to

14 individually seek legal redress for the wrongs complained of herein.

15     32.     Plaintiff has retained counsel experienced in handling class action

16 claims and claims involving violations of the Telephone Consumer Protection Act.

17     33.     A class action is a superior method for the fair and efficient

18 adjudication of this controversy. Class-wide damages are essential to induce

19 Defendants to comply with federal law. The interest of Class members in

20 individually controlling the prosecution of separate claims against Defendants is

21 small because the maximum statutory damages in an individual action for violation

22 of privacy are minimal. Management of these claims is likely to present

23 significantly fewer difficulties than those presented in many class claims.

24     34.     Defendants have acted on grounds generally applicable to the Class,

25 thereby making appropriate final injunctive relief and corresponding declaratory

26 relief with respect to the Class as a whole.

27

28

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

1

2

3

### FIRST CAUSE OF ACTION

### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. §§ 227 *ET SEQ.*

4    35.    Plaintiff incorporates by reference all of the above paragraphs of this

5    Complaint as though fully stated herein.

6    36.    Each such telephone class was made using equipment that, upon

7    information and belief, had the capacity to store or produce telephone numbers to

8    be called, using a random or sequential number generator, and to dial such

9    numbers. By using such equipment, Defendants were able to effectively make

10   thousands of phone calls simultaneously to lists of thousands of wireless phone

11   numbers of consumers without human intervention. These telephone calls were

12   made without the prior express consent of the Plaintiff and other members of the

13   Class to receive such telephone calls.

14   37.    The foregoing acts and omissions of Defendants and their agents

15   constitute numerous and multiple negligent violations of the TCPA, including but

16   not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227

17   *et seq.*

18   38.    As a result of Defendants', and Defendants' agents', negligent

19   violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an

20   award of $500.00 in statutory damages, for each and every violation, pursuant to

21   47 U.S.C. § 227(b)(3)(B).

22   39.    Plaintiff and the Class are also entitled to and seek injunctive relief

23   prohibiting such conduct in the future.

24

25

26

27

28

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

**Exh. A - 26**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND CAUSE OF ACTION**

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**

**TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S.C. §§ 227 *ET SEQ.***

40.     Plaintiff incorporates by reference the above paragraphs 1 through 34 inclusive, of this Complaint as though fully stated herein.

41.     Each such telephone class was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendants were able to effectively make thousands of phone calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.  These telephone calls were made without the prior express consent of the Plaintiff and other members of the Class to receive such telephone calls.

42.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

43.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

44.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**PRAYER FOR RELIEF**

**Wherefore,** Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

## FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF
## THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

45.     As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

46.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

47.     Any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL
## VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

48.     As a result of Defendants', and Defendants' agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

49.     Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

50.     Any other relief the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:     July 15, 2013          */s/ Ronald A. Marron*          **By Fax**
                                   By: Ronald A. Marron
                                   **LAW OFFICES OF RONALD A.**
                                   **MARRON, APLC**
                                   RONALD A. MARRON
                                   SKYE RESENDES
                                   ALEXIS WOOD

---

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT

Exh. A - 28

651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*O'Shea v. Alliance Security, LLC et al.*
CLASS ACTION COMPLAINT